Herbert G. Hatt v. Commissioner. The Albert Johann & Sons Company, Inc. v. Commissioner.
Hatt v. Commissioner
Docket Nos. 5225-66, 5226-66.
United States Tax Court
T.C. Memo 1969-229; 1969 Tax Ct. Memo LEXIS 66; 28 T.C.M. (CCH) 1194; T.C.M. (RIA) 69229; October 28, 1969. Filed Russell G. Lloyd, for the petitioners. Eugene M. Corbin, for the respondent. FEATHERSTON
Memorandum Findings of Fact and Opinion FEATHERSTON, Judge: Respondent determined deficiencies in income tax and additions to tax in the cases of petitioners Herbert G. Hatt (hereinafter referred to as Hatt) and The Albert Johann & Sons Company, Inc. (hereinafter Johann or the corporation) as follows: Herbert G. Hatt - docket No. 5225-66 Additions to Tax
Defi-
Sec.
Sec.
Sec.
Year
ciencies
[1] 6653(a)
6653(b)
6654
1957
$ 7,968.14
$3,984.07
$ 129.71
1958
5,557.69
2,778.85
24.19
1959
4,209.63
2,104.82
67.73
1960
5,617.24
2,808.62
122.02
1961
10,388.07
$519.40
1962
3,026.99
151.35
*68 The Albert Johann & Sons Company, Inc. - docket No. 5226-66 *90 Year
Deficiencies
Additions to tax
Sec. 6651(a)
Sec. 6653(a)
1955
$1,290.07
1957
1,960.21
1958
4,246.90
$637.04
$ 212.35
1959
4,240.15
212.01
212.01
1960
5,901.52
295.08
295.08
1961
4,324.63
216.23
216.23
At the beginning of the trial respondent conceded that Hatt is not subject to the section 6653(b) additions to tax determined for the years 1957 through 1960, but, with leave of Court, filed an Amended Answer alleging that Hatt is liable for additions to tax for those years under sections 6651(a) and 6653(a). Petitioners concede that they are liable for the section 6651(a) additions to tax. Many of the adjustments made in the notices of deficiency have been resolved by the parties and will be given effect in the Rule 50 computation. The issues remaining for decision are as follows: (1) Whether payments made by Johann to Guy G. Echols in 1958 and 1955 are deductible under section 162(a). (2) *69 Whether Johann is entitled under section 162(a) to deductions for salary payments to Hatt in excess of $9,100 per annum for each of the years 1958, 1959, and 1960. (3) Whether Johann is entitled to deductions for (a) one-half of the expenses attributable to the operation of a Chris-Craft boat; (b) expenses attributable to the operation of two airplanes; (c) salary payments to Freda Hatt in excess of $40 per week; and (d) purported salary payments to Fred Lucas. As a corollary, whether, to the extent these items are not deductible by Johann, Hatt received constructive dividens therefrom. 1195 (4) Whether Hatt is entitled under section 119 to exclude from his gross income a sum equal to the fair rental value of an apartment which he occupied on the premises of Johann. Closely related to this issue is the question whether Johann is entitled under section 162 to deduct the expense of utilities for that apartment. (5) Whether Hatt suffered a deductible loss in 1961 as the result of his transfer of 65 shares of Johann stock to his wife pursuant to their divorce settlement. (6) Whether Hatt suffered a net operating loss in 1956, which could be carried forward to subsequent years, *70 from the operation of the Select Sewing Center, an individual proprietorship. Closely related to this issue is the determination of the amount of taxable income Hatt realized from the operation of the Select Sewing Center in the years 1957 through 1960. (7) Whether Hatt suffered a business loss in 1962 from a recording venture in an amount greater than that determined by respondent. (8) Whether respondent erred in making numerous other miscellaneous adjustments. (9) Whether any part of any underpayment of tax due by petitioners was due to negligence or intentional disregard of rules and regulations within the meaning of section 6653(a). (10) Whether respondent erred in determining additions to Hatt's tax under section 6654. Findings of Fact Hatt was a legal resident of Evansville, Indiana, at the time his petition was filed. He did not file income tax returns for 1957, 1958, 1959, and 1960. He filed timely income tax returns for 1961 and 1962. Johann is a corporation organized under the laws of the State of Indiana. At the time its petition was filed its principal place of business was Evansville, Indiana. Johann filed corporation income tax returns for the calendar years *71 1955 and 1957 through 1961 with the district director of internal revenue, Indianapolis, Indiana. During the years in issue Johann operated a funeral home and embalming business. Hatt was born July 9, 1932. He finished grade school, attended high school for four or five months, and then entered the Army in 1952, being discharged therefrom in August or September 1954. Prior to his military service he had held numerous jobs, such as delivering newspapers, picking up and delivering laundry and dry cleaning, and working as a helper for a lathe operator. Upon his discharge from the Army he worked in California for a short time as a taxicab driver and as a salesman in a jewelry store. Thereafter, in late 1954, he returned to Indianapolis, Indiana, where he had resided as a child, and started working for Household Sewing Machine Company as a salesman. In the fall of 1955 Hatt opened a place of business known as the "Select Sewing Center," an individual proprietorship located in Evansville, Indiana, which engaged in the business of selling sewing machines. The business consisted primarily of contacting customers in their homes after they had answered advertisements. Prior to 1957 Hatt *72 became acquainted with Dorothy Echols (hereinafter Dorothy), the president and majority stockholder of Johann. They were married on March 2, 1957, at which time Hatt was approximately 25 years of age and she was about 43. Pursuant to an antenuptial agreement she then transferred to him 130 shares, a majority, of the stock of Johann, and he became the president and general manager of the corporation. Issue 1. Johann's Payments to Echols On January 24, 1956, Johann and Guy G. Echols (hereinafter Echols), Dorothy's former husband, entered into a written contract whereby Johann agreed to employ Echols in an advisory capacity at a salary of $50 per week for a period of 12 years and 6 months beginning January 3, 1956. The contract further provided that Echols, who had been an officer and director of Johann for many years, would not engage in operating, conducting, or managing a funeral home, mortuary, or undertaking establishment in Vanderburgh County, Indiana, during the term of the agreement. The contract was signed by Johann's president and attested to by its secretary, and was unanimously approved by Johann's board of directors, which included Dorothy. Johann made payments to *73 Echols in accordance with the contract from the date of its execution through 1959. At the end of 1959 Hatt terminated the contract, and the termination was ratified by Johann's board of directors at a meeting on March 31, 1960. In so doing the board of directors, which did not then include Dorothy, indicated that the contract with Echols was not an 1196 employment contract, but was part of a property settlement between Dorothy and Echols. Thereafter Echols brought suit in the state court against Johann for breach of contract, alleging in his complaint that Johann had contracted to employ him in an advisory capacity and had then terminated the contract. Johann's answer, in addition to denying the allegations of the complaint, alleged, inter alia, the following: 1. The alleged contract of January 24, 1956, was not supported by any valid consideration and was not in fact the contract of the defendant. 2. Said purported contract was in fact the contract of Dorothy B. Echols, wife of the plaintiff, Guy Echols, and was a part of a property settlement incident to divorce proceedings between the plaintiff and Dorothy B. Echols. Following a trial, judgment was entered in favor *74 of Echols in the amount of $23,300.45, the balance due under the contract. Johann appealed this judgment to the Appellate Court of Indiana, where it was affirmed. Albert Johann & Sons Company v. Echols, 238 N. E. 2d 685 (Ind. App. 1968). A motion for a rehearing was denied on September 9, 1968. At the time of the trial herein Johann intended to file a motion to transfer the matter (i. e., an appeal) to the Supreme Court of Indiana. [2]
Johann claimed deductions for payments to Echols in the amount of $2,600 for each of the years 1958 and 1959. Respondent disallowed these deductions on the theory - identical to that rejected by the Indiana courts - that the contract between Johann and Echols was an attempt to utilize corporate assets in effectuating a property settlement in the divorce proceedings between Dorothy and Echols. Issue 2. Reasonableness of Salary Paid to Hatt Upon marrying Dorothy in March 1957 Hatt became president of Johann. Prior to that time he had had no formal experience or training in the funeral home business, and was not, nor *75 did he ever become, a licensed funeral director or embalmer. However, he had gained some sales experience while operating the Select Sewing Center. In his capacity as the president of Johann, a position he continued to hold to the date of this trial, he served as its chief executive officer with the responsibility and authority of making decisions relating to the following: All expenditures of funds; purchases of capital equipment (including a hearse and two ambulances); renovation and maintenance of the corporation's principal place of business and its related facilities; promotional and advertising activities; manufacture of caskets and vaults; selection and supervision of personnel; financial arrangements with the families of decedents; efforts to collect delinquent accounts; and other similar matters. The prevailing salary of managers of funeral homes in the Evansville area during the years in controversy was $175 to $200 perweek, depending upon tenure, duties, and other factors. Johann's income tax returns reflect that Dorothy received a salary of $15,576.94 in 1955 and $21,424 in 1956 when she served as its president. She was the principal stockholder of the corporation during *76 those years. For the years 1958 through 1962 Johann's board of directors authorized salaries and bonuses for Hatt in the total amounts of $20,800, $15,300, $16,500, $16,500, and $5,200, respectively. However, the full amounts of these salaries and bonuses were not paid, due to the fact that the corporation was short of cash. Respondent determined that $9,100 per annum was reasonable compensation for the services performed by Hatt, allowed Johann deductions in that amount, and disallowed, as excessive, deductions claimed by Johann for Hatt's compensation to the extent of $7,638.49 in 1958, $2,256.14 in 1959, and $7,945.95 in 1960. The following table shows the gross sales and taxable income before special deductions reported on the income tax returns of Johann for the years indicated: Year
Gross Sales
Taxable IncomeBefore SpecialDeductions
1955
$215,426.57
$15,369.47
1956
224,805.95
20,374.86
195 7
186,159.27
9,916.14
1958
144,314.11
(4,303.25)
1959
155,385.99
(7,710.25)
1960
138,764.01
(6,152.41)
1961
116,283.68
(16,866.40) 1197 Issue 3. Expenses for (a) Boat, (b) Airplanes, (c) Freda Hatt's Salary, and (d) A Portion of Fred Lucas' *77 Salary (a) In December 1957 Hatt sold Johann a Chris-Craft boat for $6,500. The words "Johann Funeral Home" were painted on the boat. Johann claimed deductions for the years 1958 through 1962 for expenses incurred in the operation of this boat. Respondent disallowed one-half of the claimed deductions, and determined that the disallowed amounts constituted constructive dividends to Hatt from Johann, as follows: 1958
1959
1960
1961
1962
$413.62
$233.23
$286.68
$118.28
$163.10 The deficiency notice also disallowed a deduction claimed by Johann for boat expenses for 1957 in the amount of $359.27. (b) In December 1957 Johann purchased for $2,250 a Stinson aircraft, which was subsequently destroyed by fire. A Bonanza airplane was purchased in 1959 for $6,000, of which $4,000 was paid by Hatt individually and $2,000 was paid by Johann. Neither of these airplanes was ever used in Johann's business. Johann claimed deductions for airplane expenses in the following amounts, which respondent disallowed and determined to be taxable to Hatt as constructive dividends: 1958
1959
1960
1961
1962
$465.67
$2,034.45
$1,475.60
$1,979.75
$151.65
*78 Hatt took flying lessons at or about the time he became president of Johann and obtained a pilot's license. (c) One of Johann's employees was Freda Hatt (hereinafter Freda), Hatt's mother. During the period Freda lived in Evansville, Indiana, she resided in Hatt's apartment located on the premises of the corporation. Freda's primary duty was to provide cosmetic and hairdressing services for female corpses prepared for burial by Johann; outside beauticians charged $5 to $10 per corpse for these services, and Johann handled 90 to 100 female corpses each year. In addition Freda served as an attendant, answered the telephone, received and arranged flowers sent to the funeral home, did cleaning work, fixed meals for employees, and performed other duties. Johann claimed deductions for the salary paid to Freda. Respondent determined that $40 per week was reasonable compensation for her services, allowed Johann deductions in that amount, and disallowed the remaining sums of $285, $25, and $1,250 as excessive compensation to Freda for the years 1958, 1961, and 1962, respectively. Respondent further determined that these amounts were constructive dividends to Hatt. (d) Another employee of *79 Johann during the years 1958 through 1962 was Fred Lucas. During the years 1960 through 1962 Johann paid Lucas $1,269, $1,346, and $1,346, respectively. Respondent determined that $990.10 of the payments to Lucas in each of these years was not deductible as compensation for his services. On December 19, 1959, Hatt entered into an agreement with Lucas which called for the latter to buy 49 shares of Johann's stock which were then being offered for sale by the Estate of E. Harold Berges and 5 shares being offered by Frances B. Mueller. The agreement recited that the existing stockholders had a preemptive right to purchase the stock but that Hatt "is presently involved in domestic difficulties by reason of which a divorce action between himself and his wife is now pending." The agreement further recited that Lucas would purchase the Berges and Mueller stock by making a 20 percent downpayment in each case and giving notes for the balance. The notes, payable in monthly installments, were to be endorsed by Hatt and Johann. The agreement gave Hatt a proxy to vote the stock and an option to purchase the stock at any time during a period of 20 years, at the price for which it had been bought *80 plus 10 percent. Hatt was also given a lien on the stock, and his sister, Geraldi Head, was designated as escrow agent to receive and hold the stock certificates. At no time did Lucas ever receive possession of the stock certificates. Johann furnished the money used to make the 20 percent downpayments as well as the installment payments on the notes, which totaled $82.50 per month. Lucas ceased making payments on the notes in 1964, at which time Johann's payments to him also terminated. Thereafter, Hatt made the necessary installment payments on the notes. To the extent of $999.10 for each of the years 1960 through 1962, the payments made by Johann to Lucas did not constitute compensation for services rendered. Issue 4. The Apartment Immediately after his marriage to Dorothy, Hatt moved into an apartment located in the building used by Johann for its funeral 1198 home business, and he resided there during the years 1957 through 1962. Dorothy had resided in the same apartment prior to her marriage to Hatt. In addition to this apartment the building contained another apartment, which was rented, and a dormitory to house the ambulance crew. The telephone used by Johann rang *81 in Hatt's apartment as well as in the business office. He answered the telephone in the apartment when the office was closed, and met there with customers who came to the home to discuss service after regular business hours. It is customary in the Evansville area for the manager or another employee authorized to deal with customers to live on the premises of a funeral home. Issue 5. Transfer of Stock to Dorothy Hatt's marriage to Dorothy was followed shortly by a series of separations and reconciliations. Finally, on December 1, 1961, Hatt and Dorothy executed a "SEPARATION AGREEMENT CONTEMPLATING DIVORCE." One of the terms of this agreement called for Hatt to cause 65 shares of stock in Johann to be transferred to Dorothy. The stock was so transferred in 1961. In his return for 1961 Hatt claimed a short-term capital loss in the amount of $6,900 by reason of the transfer of these shares to Dorothy. Respondent disallowed the deduction. Issue 6. Net Operating Loss Hatt's income tax return for 1956, filed May 14, 1957, reflects a net profit of $3,612.79 from the Select Sewing Center. From this amount was subtracted the sum of $688.05, which was referred to as a "1955 Operating *82 Loss." The return showed a tax liability of $515.52. Hatt's income tax return for 1955 reflects salary income in the amount of $491.18 from Household Sewing Machine Company, and a loss in the amount of $688.05 from the operation of the Select Sewing Center. Claim was made on the return for the refund of $53 withheld by Household Sewing Machine Company. Hatt filed no income tax return for 1954. During that year he was a member of the Armed Forces from January through August or September. Upon his discharge, as indicated above, he worked briefly for a taxicab company and as a jewelry salesman. The records of the Social Security Administration show the earnings of Hatt reported by his employers for the years 1953 through 1962 as follows: Year
Employer
AmountReported
1953
None reported
1954
Yellow Cab Co. of California.
$ 8.50
1955
Household Sewing Machine Co.
491.18
1955
Dick Tyrrell Jewelers, Inc.
20.00
1956
Hatt, self-employed
3,612.79
1957
Johann
4,200.00
1958
None reported
1959
Johann
4,800.00
1960
Johann
3,692.25
1961
Johann
100.00
1962
Johann
4,800.00 Respondent determined that Hatt realized unreported taxable income from *83 the operation of the Select Sewing Center in the amounts of $3,521.43 and $1,224.59 in the years 1957 and 1960, respectively, and that he incurred unreported losses of $1,517.31 and $1,592.32 from the same business in 1958 and 1959, respectively. Issue 7. The Recording Venture Respondent determined that for 1962 Hatt realized a deductible loss from a recording venture of no more than $1,451.57, computed as follows: Net sales
$ 62.50
Less expenses: Band rent
$ 786.24
Arrangements
288.00
Studio rent
252.00
Legal fees
225.00
Pressing records 119.50
Total Expenses
$1,670.74
Less Inventory 156.67
Net Expenses $1,514.07
Net Loss
$1,451.57
Issue 8. Miscellaneous Adjustments In the notice of deficiency issued to Hatt respondent determined that Hatt received additional dividend income from Johann from the following items: *90 Additional Dividend Income
Item
1957
1958
1959
1960
1961
1962
(1) Rental value of auto
$ 150.00
$ 300.00
$ 500.00
$500.00
(2) Travel and entertainment
$100.00
787.16
3,162.28
979.74
953.57
(3) Miscellaneous expense
1,490.33
734.43
(4) Separate maintenance payments
835.00
(5) Checks to cash
1,299.74
223.26
(6) Airplane travel
142.30
(7) Laundry expense
137.17
(8) Unearned salary - Freda Hatt
960.00
2,470.00
2,710.00
3,315.00
(9) Miscellaneous expenses - Freda Hatt
125.50
75.00
(10) Fair rental of auto - Freda Hatt
300.00
300.00
(11) Sale of furniture - excessive price
995.63
(12) Cash dividend
650.00
(13) Cost of boat
825.00
*84 In the notice of deficiency issued to Johann respondent made the following additional adjustments to income on which agreement has not been reached: (1) Disallowed depreciation claimed for 1958 through 1961 as follows: Apartment
Boat
Airplane
Buick
Miscellaneous
1958
$1,421.54
$975.00
$225.00
0
$ 75.90
1959
2,418.64
975.00
0
0
1,075.54
1960
2,353.20
975.00
0
0
1,517.72
1961
2,395.00
975.00
0
$50.00
160.50
(2) Disallowed a deduction for 1958 for a bad debt resulting from an advance to Donald Schimmel in the amount of $172.40. (3) Disallowed deductions for items (1) through (9) in the schedule headed "Additional Dividend Income" on page 16, supra. (4) Disallowed a deduction for 1959 for a director's fee of $25 to Hatt, on the ground that it was not paid within two and one-half months after the close of the year. (5) Determined that the cost of purchases in the amount of $1,324.09 in 1959 resulting from a book entry adjustment pertaining to a refund of 1955 Federal income taxes does not constitute a deductible expense. Opinion Issue 1. Johann's Payments to Echols Section 162(a)(1) permits a deduction for ordinary *85 and necessary business expenses, including "a reasonable allowance for salaries or other compensation for personal services actually rendered." [3] Respondent's first contention is that the record fails to show that Echols actually rendered any services for Johann during 1958 and 1959 and that, therefore, Johann is not entitled to any deduction for the $2,600 payments made to him in those years. Respondent's contention cannot be sustained. The contract of January 24, 1956, pursuant to which the payments to Echols were made, obligates him to render such "services to the Corporation in an advisory capacity" as shall from time to time be "assigned to him by the Board of Directors of said Corporation." Where deductions under section 162(a)(1) are sought for payments pursuant to such an agreement - a retainer-type of contract for advisory services *86 - a showing that services were actually rendered in the particular year is not required. The rule was stated in W. D. Haden Co. v. Commissioner, 321 F. 2d 169, 173 (C.A. 5, 1963), affirming 37 T.C. 512 (1961), as follows: The parties do not dispute that retainer-type payments to a consultant to hold himself available for services are deductible as ordinary and necessary business expenses; and, so long as such was in fact the contemplation of the parties, the deductibility of the payments would not turn upon the question of whether in fact such services were ever rendered. On the other hand, such payments are not deductible, if, in fact, they are made, not for business reasons, but to effectuate a non-business purpose. And the fact that the payments are made pursuant to a binding contract does not, of itself, determine the deductibility of the payments, because the "origin and nature, and not the legal form, of the expense sought to be deducted determines the applicability of the words of" the statute. Interstate Transit Lines v. 1200 Commissioner, 1943, 319 U.S. 590, 594, 63 S. Ct. 1279, 1282, 87 L. Ed. 1607. Whether the payments were *87 made to serve a business purpose, or merely to effectuate personal, nonbusiness purposes, was a fact question for the determination of the Tax Court. * * * Thus, if the contract was in fact an employment contract, Johann was not required to show that Echols actually rendered services in 1958 and 1959 to qualify for the deduction. Respondent next contends that the contract was not in fact made to obtain the advisory services of Echols, but was part of the property settlement between Dorothy and Echols on their divorce. However, this theory was considered and rejected by the Indiana courts in the litigation between Echols and Johann. Indeed, the Appellate Court of Indiana described the relationship between the parties to the contract in these terms: The appellee herein was hired in an "advisory capacity" only, required to "render such services to the Corporation * * * as shall from time to time be assigned to him * * *." The contract specifically pointed out that Mr. Echols was recognized to be, by reason of his impaired health, unable to perform the duties required of a full time employee. He was therefore, hired in a special capacity. * * * We hold that Johann is entitled to *88 the disputed deductions. The contract shows on its face that Echols had been employed by Johann since 1943 and had served as a director and as treasurer from 1946 to October 10, 1955. Johann's 1955 income tax return shows that he drew a salary of $8,871.50 in that year. In addition to obligating him to perform advisory services as assigned, the contract forbade him to "engage in, or have any interest in, the operating, conducting or managing of any funeral home, mortuary or undertaking establishment" in Vanderburgh County, Indiana. The validity and binding effect of this contract, made by officers and ratified by directors different from those in office in the tax years, have been established through litigation which was taken to the highest appellate court of the State. Cf. Commissioner v. Estate of Bosch, 387 U.S. 456 (1967). We think that the discharge of this contractual obligation constituted an ordinary and necessary expense of Johann in 1958 and 1959. Issue 2. Reasonableness of Salary Paid to Hatt Section 162(a)(1) limits deductions for salaries and other compensation of employees to a "reasonable allowance." The determination of what is a reasonable salary *89 depends upon the fact of the particular case, e.g., the nature, extent, and scope of the employee's duties, his qualifications and prior earning capacity, the prevailing rates of compensation for similar work, the volume of business handled by the employee, the net earnings of the employer from such business, and all the other factors which enter into the determination of the amount of an employee's wages. See 4A, Merten's Law of Federal Income Taxation, secs. 25.68 through 25.85. Petitioner's own expert witness testified that the prevailing salary for a funeral home manager in the Evansville area during the years in controversy was $175 to $200 per week. Respondent's allowance of a deduction of $9,100 per year (i.e., $175 per week) is, therefore, within the salary range prevailing in the area for work similar to that performed by Hatt. We do not think the evidence justifies a higher allowance. Hatt's youth (25 years of age when he became president of Johann in 1957), lack of formal business training, failure to obtain a license either as an embalmer or a funeral director, and complete lack of experience in the funeral business prior to 1957, and the statutory strictures on participation *90 in a funeral business by non-licensed individuals, see Vol. 11, Part 2, Burns Indiana Annotated Statutes, sections 63-717 through 63-731, would necessarily place him at the lower end of the prevailing salary scale. Moreover, the practical results of Hatt's management, in terms of steadily decreasing sales and net earnings, summarized in our findings, confirm this evaluation. While Hatt suggested in his testimony that Johann's financial adversities were explained in part by unfavorable publicity which resulted from the stormy marital relationship between himself and Dorothy, eventually culminating in a divorce, the personal qualities of an employee, particularly in a business like this one, are not without significance in determining his value to his employer. Cf. Estate of Leo P. 1201 Kaufman, 35 T.C. 663, 667 (1961), affd. 300 F. 2d 128 (C.A. 6, 1962). Finally, we do not think the amount of salary paid to Johann's president prior to Hatt's ascendancy to that position is a guide to his value to the corporation. Issue 3. Expenses for (a) Boat, (b) Airplanes, (c) Freda Hatt's Salary, and (d) A Portion of Fred Lucas' Salary (a) Respondent allowed Johann *91 deductions, as promotional expenses, of one-half of the cost of operating a Chris-Craft boat on which the legend "Johann Funeral Home" was painted, and disallowed the remainder. [4] On this record we think the allowance is generous. There was no showing that the use of the boat aided Johann's business. Hatt's uncorroborated testimony that he used the boat to build goodwill by providing rides for orphans and senior citizens is not convincing. The personal use of the boat constitutes a constructive dividend to Hatt. Challenge Manufacturing Co., 37 T.C. 650 (1962). [5]
*92 (b) Johann seeks to justify the expense of operating the two airplanes through testimony that they were acquired in an effort to build an air ambulance service. We do not find this explanation convincing. The fact is that neither of the airplanes was ever used for this purpose, and there is no evidence to show that any considered judgment was ever made as to the feasibility of establishing a profitable air ambulance service. Hatt was evasive when asked whether any of his competitors provided such a service. While he testified that the airplanes were never airworthy enough for his personal use, we note that he had qualified as a pilot and, among invoices introduced into evidence, we find numerous bills for aviation gasoline bought on numerous occasions in various cities. Johann has failed to show that the airplane expenses were "ordinary and necessary" within the meaning of section 162(a). On this record we must conclude that the airplanes were maintained for Hatt's personal use and convenience, and, consequently, the disputed expenses are not deductible by Johann and are constructive dividends to him. (c) Respondent's allowance of deductions of $40 per week for payments to Hatt's *93 mother, Freda Hatt, necessarily involves a determination that she performed services for Johann. The evidence confirms this determination. The sums disallowed in excess of $40 per week - $285 in 1958, $25 in 1961, and $1,250 in 1962 - are not so substantial as to suggest that corporate earnings were being diverted to her, through the device of her salary, for Hatt's benefit or the benefit of any other shareholder. A fair evaluation of the testimony as to her services establishes, we believe, that Johann's salary payments to her were reasonable in relation to the services which she rendered, [6] and are deductible in full. *94 (d) We must sustain respondent's determinations as to Johann's payments to Fred Lucas in the years 1960 through 1962. An examination of Hatt's agreement of December 19, 1959, with Lucas and the related testimony shows, we believe, that these payments were actually made to cover the purchase price of shares of Johann's stock acquired from the Berges Estate and Frances B. Mueller. The contract itself and all the circumstances surrounding the acquisition of the stock indicate that the transaction was a "device" for Hatt, not Lucas, to acquire the stock. All the testimony offered by petitioners to bolster their position was vague, contradictory, and unconvincing. We do not think it shows that respondent erred in determining that, of the payments made by Johann to Lucas during 1960 through 1962, the sum of $990.10 per year is not deductible as salary and is a constructive dividend to Hatt. 1202 Issue 4. The Apartment Section 119 [7] grants an exclusion from gross income of the value of lodging furnished to an employee if three conditions are met: (1) The lodging is on the business premises of the employer; (2) the employee is "required to accept such lodging * * * as a condition *95 of his employment"; and (3) the lodging is furnished for the convenience of the employer. Respondent does not question petitioner's compliance with the first condition, but contends that neither of the last two conditions has been met and that, therefore, Johann is not entitled to deductions for maintenance of Hatt's apartment and that Hatt is taxable on its fair rental value as a constructive dividend. The issue is primarily factual, and petitioners, of course, have the burden of proof. George I. Stone, 32 T.C. 1021 (1959). The "condition of his employment" requirement of section 119 means that the employee must "be required to accept the lodging in order to enable him properly to perform the duties of his employment. Lodging will be regarded as furnished *96 to enable the employee properly to perform the duties of his employment when, for example, the lodging is furnished because the employee is required to be available for duty at all times * * *." Sec. 1.119-1(b), Income Tax Regs.
The "convenience of the employer" test and the "condition of his employment" test prescribed by section 119 are basically similar, United States Junior Chamber of Commerce v. United States, 334 F. 2d 660, 663 (Ct. Cl. 1964), as are the arguments made by respondent under those tests - that Hatt was president and majority stockholder of Johann, thus enabling him to determine the "convenience" of Johann and the "conditions" of his own employment, and that one or more members of the ambulance crew was available at all times to take calls or answer the telephone, thus eliminating the necessity of Hatt's presence on the premises of Johann. The facts that Hatt was the president and majority stockholder of Johann necessitate careful scrutiny of the arrangement but, in our view, do not alone disqualify Hatt for the exclusion or Johann for the claimed deductions. Cf. Armstrong v. Phinney, 394 F. 2d 661 (C.A. 5, *97 1968). Hatt also is not disqualified for the exclusion merely because the apartment was a convenience for him. William I. Olkjer, 32 T.C. 464, 469 (1959). The funeral business is of such character that it requires someone to be in attendance 24 hours a day to answer telephone calls, to meet the family members of decedents, and to make financial arrangements, as well as to arrange to pick up the bodies of decedents. Family members of decedents in the Evansville area expect someone to be in the funeral home at all times. The undisputed testimony is that the manager or some other designated employee lived on the premises of every other funeral home in Evansville. In addition, supervision of the 24-hour ambulance service maintained by Johann during this period, a source of funeral business, was also required. The telephone in Johann's business office rang in Hatt's apartment, and, as manager of the funeral home, he took calls and handled business with customers. While the ambulance crew could have received the calls, they were not authorized to handle funeral business, particularly its financial aspects. Finally, we note that Dorothy, the president of Johann before Hatt, *98 had lived in the same apartment for several years without paying rent to the corporation, and the corporation had deducted depreciation on the apartment's furnishings and related utility costs. We think that petitioners have made the requisite showings for the claimed exclusion under section 119 and the deductions for utilities expense claimed by Johann under section 162(a). Issue 5. Transfer of Stock to Dorothy Hatt's claim to a loss in 1961 on the transfer of 65 shares of his stock in Johann to Dorothy is base 1 on the theory that Johann's business was declining and he thought that further adverse publicity arising from a contested divorce suit "would be ruinous to the Corporation." Hatt asserts that he effected an "unfavorable property settlement agreement to preserve the corporate assets 1203 and reputation." Although he does not cite a Code section to support his claim, he apparently relies upon section 212(2), [8] which allows a deduction for all the ordinary and necessary expenses paid or incurred during the taxable year "for the management, conservation, or maintenance of property held for the production of income," i.e., his stock in Johann and his salary therefrom. *99 Even if Hatt's division of his Johann stock with Dorothy can be said to constitute an expense within the meaning of section 212(2), the Supreme Court's decision in United States v. Gilmore, 372 U.S. 39 (1963), resolves the issue in favor of respondent. There the taxpayer had incurred legal expenses in a divorce proceeding and sought to deduct them under section 212(2). His "overriding concern in the divorce litigation" had been to protect his income-producing assets, primarily his controlling stock interest in three corporations. The Supreme Court denied the deduction on the ground that "the characterization, as 'business' or 'personal,' of the litigation costs of resisting a claim depends on whether or not the claim arises in connection with the taxpayer's profit-seeking activities. It does not depend on the consequences that might result to a taxpayer's *100 income-producing property from a failure to defeat the claim * * *." Id. at 48. The Court concluded that "the wife's claims stemmed entirely from the marital relationship, and not, under any tenable view of things, from income-producing activity." Id. at 51. Here, the claims asserted by Dorothy against the shares of stock in Johann (not merely attorneys' fees) could not have arisen but for the marital relationship. In no sense did such claim arise in connection with Hatt's income-producing activities. Hence the expenses are not deductible. See also United States v. Patrick, 372 U.S. 53 (1963); Meyer J. Fleischman, 45 T.C. 439 (1966); Harris v. United States, 275 F. 2d 238 (C.A. 9, 1960).[9]
*101 Issue 6. Net Operating Loss To substantiate his claim to a net operating loss carryover from 1956 to subsequent years, Hatt introduced into evidence elaborate schedules, which he personally prepared, analyzing his income and deductions for 1956 through 1960 and reconstructing his income for 1955. The key to his position is the contention that for 1956 he mistakenly reported as income $12,000 given to him by Dorothy in that year, and when that sum, along with numerous relatively small adjustments, is eliminated from income, he had a net operating loss in the amount of $7,682.55 rather than a profit of $3,612.79 from the operation of the Select Sewing Center. Hatt claims that of this $12,000, $6,000 was used to pay an account to the Tessler Sewing Machine Company, $3,000 was used to make a downpayment on certain real estate, and that the balance was used in various ways, including the purchase of two boats. On the record before us we are unable to find that Hatt erroneously reported as income a gift of $12,000 or any amount in 1956. His return for that year shows on its face that it was prepared by a public accountant named Kleinlein, and Hatt testified that the figures therein *102 were determined by Kleinlein from the books and records of the Select Sewing Center. The total receipts reported in the return were only $34,205.26, [10] and these receipts were derived from numerous small transactions - sales of sewing machines. Thus, the $12,000 would have represented more than one-third of the receipts reported in the return. It is only reasonably to assume that Kleinlein, if not Hatt, would have isolated such a large item, identified it as a gift, and excluded it from income. The books and records used by Kleinlein in preparing the 1956 return were not introduced into evidence. Nor was Kleinlein called as a witness. Nor did Dorothy testify as a witness. We can only assume that their testimony, so obviously relevant, would have 1204 been adverse to Hatt. See Wichita Term. El. Co. v. Commissioner, 162 F. 2d 513 (C.A. 10, 1947). The bank statements of Hatt for 1956, introduced into evidence, do not show any separate deposits of amounts even approximating $3,000, much less $6,000 or $12,000. We have only the uncorroborated testimony of Hatt as to the $12,000 gift, and we *103 do not find his testimony convincing. As to other adjustments for 1956 through 1960, Hatt's schedules are based, not upon journals and ledgers maintained in the regular course of business for the Select Sewing Center or any other personal business endeavor on his part, but upon his own views as to the tax results which should follow from his analysis of large numbers of bank statements, checks, vouchers, and similar papers. For the reasons discussed more fully below (See Issue 8), we do not think that Hatt was competent to make such an accounting analysis or that his analysis demonstrates errors in respondent's determinations. Issue 7. The Recording Venture Respondent's determination of the amount of Hatt's loss from his recording venture was not shown to be erroneous. Hatt testified to larger expenses than were determined, but he offered no documentary or other corroborating evidence. We are not convinced that respondent erred. Issue 8. Miscellaneous Adjustments Petitioners have not carried their burden of proving that respondent's determinations of the miscellaneous adjustments described in our findings were erroneous. To support his position Hatt introduced numerous *104 elaborate schedules which, he testified, were supported by large numbers of invoices, bills, tickets, receipts, and the like. We have examined those schedules and documents and have considered Hatt's testimony in suport of them, and we are not satisfied as to either their reliability or accuracy. First, Hatt's education and business experience are very limited. He has no knowledge of bookkeeping, accounting, or the tax laws; indeed, he justified his failure to file timely income tax returns for 1957, 1958, and 1959 on the grounds that he had "never had any bookkeeping experience of any nature whatsoever, and, of course, as I say, I was of the impression that Federal tax had to be paid but this was the obligation of the company * * *. It was actually ignorance, and I have to say that." Moreover, cross-examination disclosed that he had many erroneous impressions as to how income should be reported from the transactions of the Select Sewing Center. Second, an examination of the documents, unsupported by credible explanatory testimony, shows either a complete lack of understanding of what constitutes deductible business expenses or a cynical disregard of the law. The documents introduced *105 in support of Hatt's schedules, for example, include receipts for payments of fines imposed for traffic violations, numerous receipts from drive-in theaters, cocktail bars, and widely scattered restaurants, and bills for airline tickets and other travel expenses. Nowhere in the record is there any explanation of why either Hatt or Johann was required to do the extensive entertaining and traveling evidenced by these bills. We are compelled to sustain respondent's determinations as to the items referred to in our findings as "Miscellaneous Adjustments." Issues 9 and 10. Additions to Tax In the notices of deficiency respondent determined additions to tax under section 6653(a) [11] for each of the years 1958 through 1961 in the case of Johann and for the years 1961 and 1962 in the case of Hatt. By Amended Answer respondent asserted such additions to the tax of Hatt for each of the years 1957 through 1960. Section 6653(a) provides that if any part of any underpayment is "due to negligence or intentional disregard of rules and regulations," there shall be added to the tax an amount equal to 5 percent of the underpayment. The burden of proof rests with petitioners as to the additions *106 determined in the notices of deficiency, Marcello v. Commissioner, 380 F. 2d 499, 505-507 (C.A. 5, 1967), modifying a Memorandum Opinion of this Court, and with respondent as to the additions alleged in the 1205 Amended Answer. Rule 32, Tax Court Rules of Practice.
Petitioners failed to raise any argument, either at the trial or on brief, that they are not liable for these additions. Nor did they offer any affirmative evidence to show that the errors in their returns, resulting in the underpayments of tax, were not attributable to negligence or intentional disregard of the rules. To the contrary, many of their arguments proffered to establish Hatt's net operating *107 loss deduction and to support deductions by Johann were premised on "faulty bookkeeping." Personal transactions were not segregated from business activities. Deductions were claimed by Johann for expenses of providing personal entertainment of Hatt and for a wide variety of activities ranging from Hatt's use of boats and airplanes to support payments for his estranged wife. No reasonable effort was made to prepare and file tax returns reflecting either Johann's or Hatt's true tax liability. The record clearly shows, we believe, that petitioners' underpayments of tax were due to negligence or intentional disregard of rules and regulations. The section 6653(a) additions to tax are sustained. In the notice of deficiency respondent also determined additions to Hatt's tax under section 6654(a) [12] for each of the years 1957 through 1960. Petitioners offered no evidence to show that these additions were improper, and made no argument to that effect. Accordingly, the additions to tax under section 6654(a) are also sustained. *108 Decision will be entered under Rule 50. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
2. In petitioner's brief we have been advised that such a motion was filed and was denied by the Supreme Court.↩
3. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - (1) a reasonable allowance for salaries or other compensation for personal services actually rendered; * * *↩
4. In the notice of deficiency respondent determined that Hatt realized a short-term capital gain of $727.25 on the sale of the boat in 1957. In his petition Hatt alleged that he had capital gain of only $351.75, but offered no credible evidence to show that respondent's determination was erroneous. That determination, therefore, must be sustained. ↩
5. Hatt has raised no question as to the adequacy of Johann's accumulated earnings and profits to support the determinations by respondent that Hatt realized constructive dividends as a result of the use of the boat or as a consequence of any of the other transactions referred to in the notice of deficiency.↩
6. It is noted that the parties stipulated that respondent correctly determined that other payments to Freda Hatt of $960, $2,470, $2,710, and $3,315 in the years 1958 through 1961 were not deductible by Johann. Hatt has not shown that respondent erred in determining that these payments and other benefits conferred on Freda, see Issue 8 below, were not constructive dividends to him. Hatt was the majority stockholders, president, and manager of Johann and controlled all its expenditures. His complete power to control Johann's disbursements and use of corporate property render such items taxable to him.↩
7. SEC. 119. MEALS OR LODGING FURNISHED FOR THE CONVENIENCE OF THE EMPLOYER. There shall be excluded from gross income of an employee the value of any meals or lodging furnished to him by his employer for the convenience of the employer, but only if - * * * (2) in the case of lodging, the employee is required to accept such lodging on the business premises of his employer as a condition of his employment. * * *↩
8. SEC. 212. EXPENSES FOR PRODUCTION OF INCOME. In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year - * * * (2) for the management, conservation, or maintenance of property held for the production of income; or * * *↩
9. The 65 shares of stock in question were given to Hatt by Dorothy at the time of their marriage in March 1957. He testified that her basis in these 65 shares was $6,900 and his loss claim is measured by this amount. See sec. 1015. We are not satisfied, however, from Hatt's testimony, that he actually knew Dorothy's basis in these particular shares of stock. She had apparently acquired the stock long before he appeared on the scene. She might have known her basis for the shares but she was not called as a witness. See Wichita Term. El. Co. v. Commissioner, 162 F. 2d 513↩ (C.A. 10, 1947).
10. The parties have stipulated that the correct amount was $34,316.94.↩
11. SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations with Respect to Income or Gift Taxes. - If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment. * * *↩
12. SEC. 6654. FAILURE BY INDIVIDUAL TO PAY ESTIMATED INCOME TAX. (a) Addition to the Tax. - In the case of any underpayment of estimated tax by an individual, except as provided in subsection (d), there shall be added to the tax under chapter 1 for the taxable year an amount determined at the rate of 6 percent per annum upon the amount of the underpayment (determined under subsection (b)) for the period of the underpayment (determined under subsection c)).↩